UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
04-CV-132(JMR/JSM)

Master Craft Tool Company, LLC    )
et al.                            )
                                  )
            v.                    )    ORDER
                                  )
The Stanley Works et al.          )

This troubled matter comes before the Court on defendants' motion for summary judgment. Defendants claim to have settled their disputes with the lead plaintiff; the remaining plaintiffs argue that the lead plaintiff was not authorized to settle the matter, and seek to continue the lawsuit. There comes a time when a Court must sever the Gordian knot ensnaring the parties. That time is now. While other lawsuits may yet be in the gloaming, this one must die. Accordingly, defendants' motion is granted.

I. Background[1]

Plaintiffs Robert Albertson and his son, David, invented and patented a gearless socket wrench in the early 1990s. Unlike other socket wrenches, which click into place within 5 to 20 degrees' rotation, theirs was designed to do so within less than one degree. The Albertsons styled their device a "zero-degree" wrench, promoting it with a "0°" ("Zero-Degree") trademark.

The Albertsons formed two companies to manufacture, market,

---

[1]Because this is a motion for summary judgment, the facts are taken in the light most favorable to plaintiffs.

and distribute their wrench: Zeal Industries, Inc. ("Zeal"), and Posi-Grip Tool Company, Inc. ("Posi-Grip"), also plaintiffs in this case. Later, they contacted defendant The Stanley Works ("Stanley") to negotiate further development of their product.

The Albertsons engaged in extensive negotiations with Stanley, during which they shared wrench specifications, manufacturing methods, and proprietary information. Just when it appeared a deal was imminent, Stanley told the Albertsons there would be a delay in signing the contract. Months later, the Albertsons learned Stanley, through its subsidiary, defendant Mac Tools (collectively, "Stanley"), was selling a similar wrench under a "Zero°" trademark, bearing an invalid patent number.

The Albertsons, thereafter, sought another partner to develop and sell their wrench. They secured assistance and capital from Petters Investment Group ("Petters"), eventually reaching an agreement with the lead plaintiff, Master Craft Tool Company, LLC ("Master Craft"). Beyond manufacture of the device, Petters and Master Craft sought to pursue the Albertsons' potential claims against Stanley, to which the Albertsons agreed. Under the July 30, 2003, Licensing Agreement, Master Craft acquired the "exclusive right and complete discretion to bring (or not to bring) infringement or unfair competition proceedings or any other legal proceeding" involving the Zero-Degree patents, trademarks, and trade secrets. (Declaration of Eric Baxter, ¶ 4, Ex. 2 ["Licensing

Agreement"].)  With the Licensing Agreement concluded, Master Craft, then known as Kaskaid Tool Company, filed the initial complaint in this action on January 20, 2004.

On March 26, 2004, the Albertsons, their companies, and Master Craft entered into a "Litigation Control and Joint Prosecution Agreement."  This second agreement gave Master Craft the "sole and exclusive authority, control and discretion to direct the strategy and make all material decisions in pursuing the Litigation [against defendants]."  (Declaration of Robert Albertson, ¶32, Ex. 12 at 2 ["Litigation Control Agreement"].)  Master Craft, thereafter, amended its Complaint on April 15, 2004, naming itself, the Albertsons, Zeal, and Posi-Grip as plaintiffs.

All did not go well for plaintiffs' wrench manufacturing venture.  Master Craft's president and CEO misappropriated a significant portion of Petters' investment, and later falsified evidence to support Master Craft's claims in this litigation.  On June 7, 2005, Stanley filed a motion seeking sanctions for plaintiffs' evidence falsification.

Master Craft also neglected to pay the Albertsons, as required by the Licensing Agreement, and did not pay its own attorneys' fees and costs, as required by the Litigation Control Agreement.  On July 7, 2005, the Albertsons gave Master Craft a letter giving notice of breach of both agreements.

On July 19, 2005, Master Craft's counsel in the present

3

litigation moved to withdraw. The motion was granted, on September 15, 2005. (Order, Docket No. 138.) On October 7, 2005, Master Craft moved, pursuant to Rule 41 (a)(2) of the Federal Rules of Civil Procedure, to dismiss its claims with prejudice. On April 27, 2006, Master Craft's motion was denied without prejudice pending resolution of Stanley's motion for sanctions. Some months passed, and on September 12, 2006, Master Craft renewed its motion to dismiss; on October 10, 2006, Stanley renewed its sanctions motion.

On December 8, 2006, Master Craft and Stanley entered into a Stipulation and Order ("Order") withdrawing Stanley's motion for sanctions and dismissing Master Craft's claims with prejudice. The Order provided:

> Master Craft warrants that it has not assigned its claims to any other individual or entity. Master Craft and the remaining Plaintiffs have terminated their joint prosecution agreement and licenses. These terminations shall not be considered an assignment, and Master Craft shall have no liability to Stanley for breach of warranty under this section resulting from the terminations.

(Order, ¶ 9, Docket No. 191). And so it appeared this case came to an end. But appearances are deceiving, in light of the Albertsons' present claim that the matter was improperly dismissed by Master Craft.

Defendants now seek summary judgment, arguing, among other things, that the Albertsons and their companies (hereafter "plaintiffs") lack standing to pursue this litigation. The Court

4

agrees.

II. Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis omitted).

The burden of establishing Article III standing always lies with the party invoking federal jurisdiction. See Warth v. Seldin, 422 U.S. 490, 498 (1975). To sustain its burden, a plaintiff must prove "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Dep't of Commerce v. United States House of Representatives, 525 U.S. 316, 329 (1999). "Because standing is determined as of the lawsuit's commencement," the court must consider "the facts as they existed at that time." Steger v.

Franco, 228 F.3d 889, 892 (8th Cir. 2000).

With this understanding, the Court notes that, when this lawsuit was filed, plaintiffs had contractually transferred to Master Craft the "exclusive right and complete discretion to bring (or not to bring) infringement or unfair competition proceedings or any other legal proceeding" against the defendants arising out of their patents, trademarks, and trade secrets. This language is clear. Plaintiffs assigned their entire cause of action against defendants to Master Craft. When the Complaint was filed, plaintiffs had relinquished any claims - and any standing to sue upon them - to Master Craft. And because standing must be determined as of the date of the Complaint, the Court concludes plaintiffs lack standing to maintain this action. See Steger, 228 F.3d at 892.

Plaintiffs now claim the right to pursue this litigation reverted to them when they terminated their Agreements with Master Craft in July, 2005. They are wrong for two reasons: first, because standing is determined as of the commencement of the action; and second, because the Agreements do not provide for reversion of the litigation rights.

The parties' Agreements are governed in relevant part by Minnesota law. (See Licensing Agreement at ¶ 9.13.) Contract interpretation is a question of law; its primary goal is to determine and enforce the intent of the parties. Travertine Corp.

6

v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004) (en banc). The Court first looks to the plain language of the written contract. Id. When that language is clear and unambiguous, it is not for the Court to rewrite it. Id.

By its terms, the Licensing Agreement unambiguously gives Master Craft complete control over any and all litigation concerning the Zero-Degree intellectual property. Thus, Master Craft, and not the Albertsons, had "the exclusive right and complete discretion" to litigate, and the right to negotiate with defendants. (Licensing Agreement § 4.2.) The Albertsons contractually relinquished their right to bring any lawsuits of their own without Master Craft's express written consent. (Id.)

Similarly, in the Litigation Control Agreement, executed shortly before the Complaint was amended, plaintiffs gave Master Craft "the sole and exclusive authority, control and discretion to direct the strategy and make all material decisions" in the litigation. This second agreement gave to Master Craft the "exclusive authority" to "make settlement offers, accept settlement offers, reject settlement offers, and otherwise determine whether and on what terms to settle or otherwise compromise" the litigation. (Litigation Control Agreement, ¶ 1.) Here, the parties agreed that Master Craft would keep "any damages, settlement proceeds, fees, or other consideration" resulting from the litigation, as well as 75% of any punitive damages recovered.

(Id. ¶ 3.)  By its terms, the Litigation Control Agreement "amends and supersedes all previous oral or written agreements by or among the parties as it relates to the Mac Tool (Stanley) litigation that are inconsistent" with its terms.  (Id. ¶ 6.)

The Court finds no language in either Agreement indicating any parties' intent to have a reversion of any of these litigation rights upon termination.  The Litigation Control Agreement is completely silent on the subject.  The Licensing Agreement provides that a party claiming breach:

> may give the other party written notice of the breach, specifying the nature thereof.  If the party recovering [sic] such notice fails to cure the breach specified in the notice within 30 days of receipt of the notice, the notifying party may terminate this Agreement by giving written notice of termination.  This Agreement shall terminate on the effective date specified in such written notice of termination.

(Id. at §7.2)

The Licensing Agreement states that termination of the Agreement shall be plaintiffs' "sole and exclusive remedy" for Master Craft's material breach.  (Id.)  Section 7.3, entitled "Events Upon Termination," outlines a post-termination scenario, addressing how termination will affect the performance of other contracts and licenses, the marketing and use of licensed technology, and the confidentiality of documents and information.

In contrast, the Licensing Agreement says not a word about litigation rights reverting to plaintiffs upon termination.  The Court, therefore, finds no manifestation of any intention, except

8

that this case would continue under the exclusive direction and control of Master Craft.

Finally, whatever disputes may exist - or have existed - between Master Craft and plaintiffs, there is no indication, whatsoever, that plaintiffs conveyed any notice of these issues to defendants.  From the standpoint of the Court and defendants, this matter was concluded at arm's length, between adverse parties, who resolved their dispute and settled their claim in good faith.  And the Court finds it appropriate that it remain so.

The Court expresses no opinion as to whether any inter-plaintiff claims may exist or may prevail; those issues are not before the Court.  But the present matter is concluded.

III. Conclusion

For the foregoing reasons, defendants' motion is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  July 6, 2007

s/ James M. Rosenbaum  
JAMES M. ROSENBAUM  
United States Chief District Judge